**In the Matter of Elmos R. LOMAX, Appellee.**

**No. 10311.**

District of Columbia Court of Appeals.

Argued en banc May 9, 1977.

Decided May 9, 1978.

Alexia Morrison, Asst. U. S. Atty., Washington D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and John C. Martin, Asst. U. S. Attys., Washington D. C., were on the brief, for appellant [Superintendent, Saint Elizabeths Hospital].

Silas J. Wasserstrom, Public Defender Service, Washington D. C., with whom Frederick H. Weisberg, Mildred M. Matesich, and Alan F. Greenwald, Public Defender Service, Washington D. C., were on the Petition for Rehearing, for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS, and MACK, Associate Judges.*

MACK, Associate Judge:

This case was originally considered by a division of the court which in due course rendered judgment and issued majority and dissenting opinions which have been reported.[1] Subsequently, a majority of the then-sitting judges voted to grant appellee Lomax's petition for rehearing en banc.

We now vacate the decision of the original panel and hold that the petitioner in an involuntary commitment proceeding brought under the District of Columbia Hospitalization of the Mentally Ill Act has no right of appeal after a verdict is rendered in favor of the patient.

I.

The salient facts are these.[2] Appellee Lomax, a fifty-three-year-old man with undisputed mental illness, was admitted to Saint Elizabeths Hospital in August of 1975 on an emergency basis. Thereafter the superintendent of the hospital brought a petition for his judicial hospitalization (civil commitment) pursuant to the District of Columbia Hospitalization of the Mentally Ill Act (the Act).[3] The culmination of that commitment process, some four months later, was a jury trial at which the jury found

---

* Associate Judge FICKLING, who was a member of the division which originally decided this case, died prior to the rehearing *en banc.*

   Associate Judge FERREN took no part in the consideration or decision of this case.

1. *In re Lomax,* D.C.App., 367 A.2d 1272 (1976).

2. The factual background of this controversy is set out in great detail in both the majority and dissenting opinions of the original division (367 A.2d 1272) and need not be repeated in full here.

3. D.C.Code 1973, §§ 21–501 *et seq.*

that appellee was not committable.[4] Accordingly, the trial court on December 18, 1975, entered an order directing that the petition for judicial hospitalization be dismissed and that appellee be released from the hospital.[5] That order [6] is the subject of this appeal.

Appellant, the superintendent of the hospital, who has been represented throughout these proceedings by the United States Attorney, has argued that the trial court committed reversible error when it denied a motion for a mistrial based on certain remarks made by appellee's trial counsel in the course of her opening statement. He asserts that those remarks so prejudiced the jury as to taint the verdict and require a remand for a new trial. Appellee, on the other hand, has maintained, on both statutory and constitutional grounds, that the order is nonappealable, and that in any event, no reversible error occurred.

## II.

Appellant bases his asserted right to appeal this case on D.C.Code 1973, § 11–721, which provides, in pertinent part, that

(a) The District of Columbia Court of Appeals has jurisdiction of appeals from—

(1) all final orders and judgments of the Superior Court of the District of Columbia;

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, a party aggrieved by an order or judgment specified in subsection (a) of this section, may appeal therefrom

as of right to the District of Columbia Court of Appeals.

Appellant reasons that, as the petitioner in this civil commitment case, he is a "party aggrieved" by the order releasing the patient and dismissing the petition after a verdict in the patient's favor and, that order being a final one, Section 11–721 authorizes this appeal.

We note initially that the reading of Section 11–721 which appellant urges would apply equally to an appeal by the government following an acquittal in a criminal case. The "literal application" argument, therefore, is not persuasive in the circumstances before us. Indeed a literal reading of the section might be said to require the opposite conclusion from that urged by appellant since it is difficult to see how any party can be "aggrieved" by another's release from detention, absent a public interest consideration. And it is just as incongruous to suggest that the public is aggrieved by the release of a patient found not to be committable as it is to suggest that the public is aggrieved where a person accused of crime is released after a finding of innocence.[7]

The question of appealability, therefore, must be viewed in light of the Act under which the disputed order arose. That Act, which is significantly silent with respect to such appeal, contains a sophisticated framework of standards and procedures which control the entire course of involuntary hospitalization from the time of emergency admission to the disposition of the petition by the trial court following a finding by that court or a jury verdict.[8] Keeping in mind that a "statute sanctioning such a

---

4. The jury found that Mr. Lomax *was* mentally ill but was *not* likely to injure himself or others if allowed to remain at liberty. Another jury had reached the same result six months earlier.

5. *See* D.C.Code 1973, § 21–545(b).

6. The order of release was stayed on January 21, 1976, by this court. The stay, which became the subject of a constitutional challenge by appellee, was dissolved (by the en banc

court without comment) on September 23, 1977.

7. This is without regard to the broader issue of double jeopardy, protecting against multiple prosecutions for the same offense.

8. Thus, the appellee was admitted to Saint Elizabeths on August 25, 1975, on an involuntary basis (§§ 21–521 and –522). On August 27, his continued hospitalization for emergency observation was authorized by court order (§ 21–

drastic curtailment of the rights of citizens must be narrowly, even grudgingly, construed," [9] we find that the design and intent of that legislation operate to defeat this appeal just as certainly as the double jeopardy clause does in the criminal law context.[10]

The Act is a comprehensive statutory scheme which evolved out of a "profound congressional concern for the liberties of the mentally ill" [11] and was designed with a view to securing at last the civil and constitutional rights of that long-neglected group.[12] One of the concerns was that no one be hospitalized involuntarily for a prolonged period unless a judge or jury found the patient to be both mentally ill and likely to injure himself or others. Thus the very core of the Act is an explicit and expedited timetable, at the conclusion of which the patient is either released or committed.[13] Time periods from 24 to 48 hours are specified for emergency hospitalization, detention without court order, and court review and determination of the need for further hospitalization, which is in turn limited. Hearings and examinations are required to be conducted promptly, and where findings are made that the patient is not mentally ill *or* is not dangerous, immediate release and dismissal of the petition are required.

In this case, illustratively, only four months elapsed between appellee's admission and the jury's final verdict (at which

---

523). On September 3, 1975, a petition for appellee's judicial hospitalization (civil commitment) was filed (§ 21–541). That filing triggered § 21–528, pursuant to which a Superior Court judge ordered appellee's continued detention, also on September 3. On September 18, the Mental Health Commission held a hearing (§ 21–542). After two continuances to give the hospital an opportunity to place Mr. Lomax in a foster home, the Commission concluded it could delay no longer and, on November 13, 1975, it recommended appellee's commitment for an indefinite period (§ 21–544). Mr. Lomax then requested a jury trial (§§ 21–544 and –545(a)). Following the jury verdict, the trial court on December 18, 1975, dismissed the petition and ordered appellee's release, as it was required to do (§ 21–545(b)).

9. *Covington v. Harris,* 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969).

10. Appellee has argued that the double jeopardy clause applies to civil commitment proceedings just as it does to juvenile delinquency proceedings, *see Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), but we need not reach that issue.

11. *Covington v. Harris, supra,* 136 U.S.App. D.C. at 41, 419 F.2d at 623.

12. *In re Ballay,* 157 U.S.App.D.C. 59, 71–72, 482 F.2d 648, 660–61 (1973); *Covington v. Harris, supra,* 136 U.S.App.D.C. at 41,, 419 F.2d at 623; *Protecting the Rights of the Mentally Ill,* S.Rep. No. 925, 88th Cong., 2d Sess. (1964); *Hearings on the Constitutional Rights of the Mentally Ill Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary,* 91st Cong.,1st and 2d Sess. (1969–70).

13. Thus, for example, the Act provides for involuntary emergency hospitalization only where a certified *emergency* exists and only for a period of *24 hours* until a psychiatrist on duty at the admitting hospital can examine the person alleged to be mentally ill. D.C.Code 1973, §§ 21–521 and –522. A person alleged to be mentally ill may not be detained beyond an initial *48 hour period* without a court order. *Id.* §§ 21–521, –523. Section 21–524 then requires the court receiving a hospital's petition for emergency observation and diagnosis of persons temporarily detained under the Act to review the written record and make a determination within *24 hours* as to the appropriateness of further hospitalization for a *seven-day period.* The court must either order the seven-day involuntary hospitalization or order the person's *immediate release.* If the court orders the seven-day hospitalization, § 21–525 requires that upon the patient's request, a probable cause hearing on the issue of his further hospitalization must be held *within 24 hours* after receipt of the request for a hearing. If a hearing is held and probable cause is found, other provisions come into play. Section 21–542, for example, requires the Mental Health Commission *promptly* to examine the patient and *promptly* to hold a hearing. Under § 21–544, if the Commission finds that a person is not mentally ill and dangerous, it shall *immediately* order his release. If, on the other hand, the Commission finds that the respondent is mentally ill and dangerous, § 21–545(a) requires the court *promptly* to set the matter for a hearing and, if a jury is requested, it shall be accorded with *all reasonable speed.* Finally, § 21–545(b) requires that upon a finding by the court or jury, as the case may be, that the patient is either not mentally ill or not dangerous, the court *shall dismiss the petition and order his release.*

time Mr. Lomax should have been released). The fact that the appeals process has consumed over 28 months is simple but eloquent proof of the fundamental inconsistency between the Act and appellant's claimed right of appeal.

Moreover, under the statutory scheme, there is no logical reason for an appeal by a petitioner. The issue at any retrial would be the *current* mental condition of the patient. By the simple expediency of filing a physician's certificate (or a sworn written statement if a patient has refused examination) that in the petitioner's opinion the mental condition of the patient is such that, if left at liberty, the patient is likely to injure himself or others, the whole process may begin anew within the confines and protections of the Act[14]—and without resort to the intricacies of the appellate process which can lead to no meaningful determination as to the fact in issue, which is a waste of time of the appellate court and counsel, and which inevitably will involve a delay undesirable from the standpoint of either protection of the public or the constitutional rights of the patient.[15]

Appellant has suggested that he has a right to have the petition fairly tried by an untainted jury. But for the reason noted above, it is not necessary to infer a right to appeal to achieve that end. Another trial will doubtless be held in due course (and before a new jury), if appellee's mental condition warrants the filing of a new petition; if it does not, appellee should not be subjected to another trial.

At the en banc oral argument, appellant's counsel stressed, as a reason for allowance of this appeal, the vindication of the public interest in halting the serious professional misconduct which trial counsel's opening statement allegedly typifies.[16] But this is a problem which has been handled in the criminal law for centuries without allowing the government to appeal from an acquittal. We are confident that trial judges are able to maintain proper standards in their courtrooms, and they traditionally are accorded broad discretion in doing so. For unusually egregious behavior resort can be had to contempt processes or a complaint can be filed with the Board on Professional Responsibility.

We conclude therefore that allowance of an appeal in this case would serve no legitimate purpose, would be in fundamental conflict with the salutary goals and provisions of the Act, and would jeopardize the rights of the mentally ill. This appeal is dismissed.[17]

*So ordered.*

HARRIS, Associate Judge, with whom Associate Judge NEBEKER concurs, dissenting:

The majority opinion is akin to a murder mystery which remains unsolved, or to a shell game without a pea. It patently is devoid of a rationale.

There is no need to develop an in-depth analysis at this stage; my views on both the appealability question and the merits of the case are fully set forth in the original majority opinion which the en banc court has chosen to nullify. *In re Lomax,* D.C. App., 367 A.2d 1272 (1976). It should be noted, however, that the differences between Judge Mack's earlier dissent (367 A.2d at 1283) and the current majority opinion are striking. While the major portion of the original dissent reflected disagreement with the stay which had been

14. *See* D.C.Code 1973, § 21–541.

15. The Act gives no authority for detention pending appeal.

16. We, of course, express no view as to the accuracy of the characterization of counsel's conduct.

17. In light of the dissent, we feel constrained to point out what we assumed was obvious: that in view of our disposition of this case today on statutory grounds, it is unnecessary to reach the constitutional issues discussed in the division opinions which we today vacate. *See* 367 A.2d 1272, 1283.

granted by a motions division of this court, that dissent also reflected its author's apparent belief in the existence of constitutional barriers to the government's right to appeal from an adverse result in a civil commitment proceeding. Those purported barriers have vanished in the interim.

Two facts are inescapable in this proceeding. The Superintendent of Saint Elizabeths Hospital (hereinafter the government) was the moving party in the trial court, and the government lost the case. By any proper standard, those facts make the government the party aggrieved by the outcome of the trial, and entitle it to take an appeal "as of right" pursuant to § 11–721(b) of the District of Columbia Code. The majority opinion cites no statutory or constitutional bar to the government's right to appeal, but sets forth instead homilies such as "it is difficult to see how any party can be 'aggrieved' by another's release from detention . . . ." Equally unpersuasive from a jurisdictional standpoint is the majority's reliance upon the fact that the government had as a potential alternative to an appeal the initiation of a new civil commitment proceeding. The government felt that it erroneously had been denied a fair trial, and it is not our role to question the wisdom of its seeking appellate review rather than some other remedy of supposedly equal efficacy.

Notably vague in the majority opinion is its statement "that the design and intent of [the civil commitment] legislation operate to defeat this appeal just as certainly as the double jeopardy clause does in the criminal law context." Initially, I note that the double jeopardy clause does not constitute a per se bar to the government's right to appeal in a criminal case. Irrespective of such statutory provisions as those which specify the government's right to appeal from certain adverse rulings either before or during a criminal trial (see D.C.Code 1973, § 23–104), the following propositions which were set forth in footnote 6 to the now-vacated prior majority opinion remain valid:

The double jeopardy clause is directed against multiple criminal prosecutions, not against government appeals. *United States v. Wilson,* 420 U.S. 332, 342, 95 S.Ct. 1013, 43 L.Ed.2d 232 . . . (1975). However, within such a context, where a government appeal would require a new trial if successful, it is that clause which acts as the constitutional impediment to the initiation of appellate review by the government. *See United States v. Jenkins,* 420 U.S. 358, 369, 95 S.Ct. 1006, 43 L.Ed.2d 250 . . . (1975). [367 A.2d at 1278 n. 6.]

The current majority opinion quite properly stops short of asserting that double jeopardy principles have any real applicability here, for unquestionably they do not. The Supreme Court stated in *United States v. Wilson, supra,* 420 U.S. at 344 n. 13, 95 S.Ct. at 1022:

On a number of occasions, the Court has observed that the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally for the same offense." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). [Further citations omitted.]

Assuredly a mental health proceeding must be classified as noncriminal. Illustratively, the circuit court has noted: "The purpose of involuntary hospitalization is treatment, not punishment." *Rouse v. Cameron,* 125 U.S.App.D.C. 366, 367, 373 F.2d 451, 452 (1966). *See also Gomes v. Gaugham,* 471 F.2d 794, 797 (1st Cir. 1973).

In its concluding paragraph, the majority opinion states in part "that allowance of an appeal in this case would serve no legitimate purpose . . . ." However, we are not dealing here with one of those limited situations in which a party may obtain our review of an adverse trial court judgment only by having an application for allowance of an appeal granted. *See* D.C. Code 1973, § 11–721(c). In all other cases, Congress has given a losing party an appeal "as of right" by § 11–721(b) [*see also* § 11–721(a)(1)].

The majority opinion does more than decline to allow an appeal; it takes away a right to appeal which specifically is afforded by the Code. What the majority does today is to create the wholly incongruous situation in which only one party to a proceeding under the Hospitalization of the Mentally Ill Act—the respondent—may appeal from an adverse result. It does so without there being any statutory (or constitutional) support for such a ruling. The majority's suggestion that legal error in a civil commitment proceeding may be handled by resort to professional discipline is specious. The government's basic position here (which I still consider to be eminently sound) is that the trial judge erred in denying a motion for a mistrial, not that respondent's trial counsel violated the Code of Professional Responsibility. Today's holding (assuming a result in favor of a respondent) precludes appellate review of any error by the trial court, no matter how egregious or how harmful the result thereof may be to the respondent or the community. Henceforth even a manifestly erroneous ruling by a trial judge in a civil commitment proceeding (e. g., an unwarranted directed verdict in favor of a respondent) is immune from appellate review. This scarcely comports with the system of balances which has been built so carefully into our judicial processes.

A knowledgeable observer undoubtedly will conclude that the absence of a discernible rationale for the majority's dismissal of this appeal is not to be attributed to a lack of effort by the able judge who authored the majority opinion, but rather to the inescapable fact that there is no valid, articulable legal theory which can attain the support of a majority of the en banc court. I firmly believe that sound jurisprudence demands more than decision by a mere preference for a particular result. Accordingly, I respectfully dissent.