**In the Matter of Fulton SNOWDEN, Appellant.**

**No. 79–78.**

District of Columbia Court of Appeals.

Argued Aug. 12, 1980.

Decided Oct. 28, 1980.

Gregory B. Macaulay, Washington, D. C., appointed by the court, for appellant.

W. Randolph Teslik, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Mark J. Biros, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before GALLAGHER, MACK and PRYOR, Associate Judges.

PER CURIAM:

Following a jury trial, appellant was found to be mentally ill, and because of his mental illness, likely to injure himself or others if allowed to remain at liberty. He was, accordingly, committed to Saint Elizabeths Hospital. Appellant, here posits several objections with respect to the jury instructions. He first asserts that the court committed error by rejecting appellant's requested instruction that the jury might find appellant likely to injure himself or others only if it found appellant had committed a recent overt act indicating dangerousness. The second and third challenges, both raised for the first time on appeal, relate to the propriety of two other instructions—an expert witness instruction and an instruction regarding the government's burden of proof. It is also argued, for the first time on appeal, that appellant suffered prejudice by reason of reference to the alternative consequences of the jury's disposition—treatment or release. We need not pursue this last issue, however, because the references were not pronounced and clearly do not amount to plain error. Each of appellant's other contentions is reviewed below and, finding no error, we affirm.

Upon application of an officer authorized to make arrests in the District of Columbia, D.C.Code, 1973, § 21–521, appellant was admitted, on October 1, 1978, to Saint Elizabeths Hospital for mental observation. The next day, appellee petitioned the court for an order extending appellant's emergency hospitalization, and, on October 11, 1978, instituted civil commitment proceedings pursuant to D.C.Code 1973, § 21–541. Within a few days, the Commission on Mental Health conducted a hearing and found appellant to be mentally ill and, as a result of the illness, likely to injure himself or others. When the Commission's findings and recommendations were filed with the court, appellant requested and was granted a jury trial.

*The Evidence*

The testimony of appellant's mother, Mrs. Jacqueline Snowden; a Metropolitan police officer, Jeffrey Hussey; and two psychiatrists who observed appellant in their professional capacity, established that appellant was indeed mentally ill. In medical terms, he was diagnosed as schizophrenic–schizo–affective type. This illness is characterized by obscured perception, impaired thought, and disorderly behavior. The witnesses all believed appellant to be mentally ill, and as the result of that illness, a danger to himself and others if allowed to remain at liberty.

Mrs. Snowden testified that in 1974 appellant was discharged from the military service due to mental illness. From that time until 1978, he lived with his mother. During that period, Mrs. Snowden felt that her son behaved in an irrational and threatening manner: he threatened his brother with a knife when it was suggested that appellant get medical help for his illness; for no apparent reason, he threatened to bomb and kill people in the building where Mrs. Snowden was employed; and approximately six months before trial, appellant attempted to injure his brother while they were together in a car.

Although clothing was provided for him, appellant sometimes wandered into the streets in the nude. On several occasions, he had been picked up by police officers, and because of bizarre behavior, taken to Saint Elizabeths Hospital. Most recently, he menaced and pursued a woman who was a stranger to him. In response to the woman's call for assistance, an officer approached appellant and when be became

violent, restrained him and transported him to Saint Elizabeths. At the hospital, appellant continued to be violent and eventually had to be placed in shackles.

There were, of course, times when appellant was tranquil, especially when he used his medicine as prescribed. Dr. Roat, who had treated appellant during his thirteen admissions to Saint Elizabeths Hospital from 1976 to 1978, believed that appellant had improved somewhat but still posed a threat to himself and others.[1] He described the patient as unrealistic, disorganized, overactive, and subject to unprovoked and unpredictable violent outbursts.

Based on an examination of appellant, and the testimony of the witnesses at trial, Dr. Wedge, a member of the Commission on Mental Health, concurred with Dr. Roat's diagnosis. He felt appellant to be "extremely threatening" and quite likely to be dangerous to himself and others.

*Jury Instructions*

■ At the close of the evidence, defense counsel requested that the court instruct the jury that it find appellant likely to injure himself or others only if it found that appellant had committed a recent overt act indicating future dangerousness. The court denied this request. Appellant contends that in so doing, the court erred.

At the time of appellant's trial, the substantive test for civil commitment was whether "the person is mentally ill and, because of that illness, likely to injure himself or other persons if allowed to remain at liberty. . . ." D.C.Code 1973, § 21–545(b). The burden of proof at that time was proof beyond a reasonable doubt. *In re Hodges,* D.C.App., 325 A.2d 605 (1974). Following the Supreme Court decision of *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the burden of proof has since changed to clear and convincing evidence. *See In re Nelson,* D.C.App., 408 A.2d 1233 (1979).

Consistent with the law at the time of trial, the court instructed the jury, in part, as follows:

The Court may order the Respondent's hospitalization, only if you, the jury, are convinced beyond a reasonable doubt, as I said, one, that the Respondent is mentally ill, and two, that because of that illness, the Respondent is likely to injure himself or others, if allowed to remain at liberty . . .

Now you are advised as I have said several times before, the Petitioner bears the burden of proof and must prove the elements beyond a reasonable doubt.

If you find that that Petitioner has failed to establish beyond a reasonable doubt, either one or both of these elements, the Court may not order the Respondent's hospitalization or treatment, but will order his immediate release from the hospital.

If, on the other hand you should find the Petitioner has established beyond a reasonable doubt both of these essential elements, the Court may order the Respondent hospitalized for an indeterminate period, or such other alternative course of treatment as the Court believes will be in the best interest of the Respondent, and of the public.

Now the first essential element which the Government must prove beyond a reasonable doubt, is that the Respondent is at the present time, mentally ill . . .

If you do not find beyond a reasonable doubt that the Respondent is mentally ill, then the case is at an end, that ends it. But if you find that the Respondent is mentally ill, then you must consider the second element of the case, whether because of the mental illness, the Respondent is likely to injure himself or others.

Now to go into more detail on the second element, as we have said, which

---

1. On cross–examination, defense counsel brought to the attention of Dr. Roat a statement he signed on or about September 19, 1978, in which he stated that appellant was competent to request that his legal status be changed to a volunteer patient; that appellant

was not likely to injure himself or others. Dr. Roat responded that the statement was signed before he became aware of the incidents with family members and had not reviewed all of the charges.

the Government must prove beyond a reasonable doubt, and that is the one that the Respondent, because of his mental illness is likely to injure himself or others, if allowed to remain at liberty.

In order to establish the second element, a Petitioner must prove beyond a reasonable doubt, that the Respondent is likely to injure himself or others, if allowed to remain at liberty and that he is likely to do so because of being mentally ill.

Now the phrase injure himself or others, does not necessarily mean physical danger or violence. A person is likely to injure himself or others, within the meaning of the law, if that person, by reason of being mentally ill, is likely to inadvertently place himself in a position of danger or is likely to suffer harm.

A person is likely to injure himself or others, within the meaning of the law, if that person, by reason of mental illness, is likely to perform some act or acts, or fail to do some act or acts, which are likely to result in harm to himself or others, and such act or acts may be either violent or non–violent . . .

The above instruction is an accurate statement of the law as it was at the time of appellant's trial. It encompasses the likelihood–of–injury standard of the statute, and the then viable beyond a reasonable doubt burden of proof.

The "recent overt act" test which appellant suggests, is not mandated by our statute or case precedent. Whether the respondent in any commitment proceeding has recently committed an overt act which indicates future dangerousness, is a factor which may be argued to the jury, but there is no requirement of an instruction to that effect.

Appellant argues that unless there is a requirement of a recent overt act, he is being subjected to cruel and unusual punishment in contravention of his constitutional right.

■ While there are some similarities between an involuntary civil commitment and a criminal trial,[2] there are also differences which make us unable to accept appellant's analogy. As we noted in *In re Nelson, supra,* the primary purpose of an involuntary civil commitment is to provide psychiatric treatment to persons in need of the same, even though an ancillary concern may be for the state to protect its citizenry from the perceived dangers of the mentally ill. *Id.* at 1237. Further, we there noted that unlike criminal proceedings which are clearly adversarial in nature, the interests of the individual and the state in involuntary civil commitment proceedings should be congruent. *Id.*

We, therefore, find the criminal cases on which appellant relies to buttress his argument, to be inapposite.

Appellant also urges us to adopt a recent overt act standard based on the fact that a "growing number of courts have held that due process requires that the individual have committed a recent overt act indicating future dangerousness before the state may civilly commit him."[3] The government has responded to this by citing "a more recent ground swell of cases that have held to the contrary."[4]

2. *See, e. g., In re Lomax,* D.C.App., 386 A.2d 1185 (1978) (en banc), where this court recognized the similarity between government's right to appeal in civil commitment proceedings and in criminal cases.

3. Appellant relies on the following cases in support of his proposition: *Suzuki v. Alba,* 438 F.Supp. 1106, 1110 (D. Hawaii 1977); *Stamus v. Leonhardt,* 414 F.Supp. 439, 451 (S.D.Iowa 1976); *Doremus v. Farrell,* 407 F.Supp. 509, 514–15 (D.Neb.1975); *Lynch v. Baxley,* 386 F.Supp. 378, 391 (N.D.Ala.1974); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1093 (E.D.Wis.

1972), (three judge court), *vacated and remanded for a more specific order,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *order on remand,* 379 F.Supp. 1376 (E.D.Wis.1974), *vacated and remanded on other grounds,* 421 U.S. 957 (1975), *order reinstated on remand,* 413 F.Supp. 1318 (E.D.Wis.1976); *Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. 155, 339 A.2d 764 (1975), *appeal dismissed,* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976).

4. Appellee cites the following as authority for its proposition: *See, e. g., Colyar v. Third Judicial Court,* 469 F.Supp. 424 (D.Utah 1979);

We have reviewed the authority cited by both parties and conclude that there is no reason for the court to add to the substantive test for civil commitment found in D.C. Code 1973, § 21–545(b), the requirement of a recent overt act on the part of appellant indicating future dangerousness.

We find no error with the instruction given by the trial court as it relates to appellant's first assigned point of error.

■ For the first time during this litigation, appellant challenges the instructions to the jury with respect to the government's burden of proof, and expert witnesses. In effect, appellant contends that in paraphrasing the instructions on reasonable doubt and expert testimony the court committed plain error. The court instructed:

Now we have had witnesses in cases like this, as we always do, who are presented to you as experts.

In this particular case the experts were in the field of psychiatry and medicine. Well, now, a person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he's especially versed and which is material to the case.

Now this kind of evidence should be considered and weighed by you, like any other evidence in the case. You are not bound by it, if the facts upon which the opinion is based, have not been established to your satisfaction by the evidence.

However, you should not reject it if it is not uncontradicted and not inherently unreasonable.

With respect to reasonable doubt, the court charged:

Now reasonable doubt is a doubt based on reason, as the name implies. It is a doubt for which you can give a reason. It is the kind of a doubt that would cause you, as a juror, after careful and candid and impartial consideration of all of the evidence, to be so undecided that you cannot say that you have an abiding, conviction that the Respondent is mentally ill. These are the things you have to find, of course, and because of his mental illness, is likely to injure himself or others, if allowed to remain at liberty.

It's the kind of a doubt that would cause you as a reasonable person, to hesitate and pause in the graver and more important issues in your own lives.

However, it's not a fanciful doubt nor a whimsical doubt nor a doubt based on conjecture, it's a doubt based on reason.

The Petitioner, the superintendent of St. Elizabeth's Hospital, he's not required to establish the essential elements of the case beyond all doubt, or to a mathematical certainty or to a scientific certainty, its burden is beyond a reasonable doubt.

This is a difficult concept in any judgment, and I sometimes try to explain it with an observation made by a famous philosopher, historian, when he said, that certainty is not possible in any phase of life, whether it be science or religion or in our ordinary every day affairs. This is true, he said, whether you're building a cathedral, crossing the street or saving your own soul. The most that can be expected, he said, is a high degree of probability.

It is perhaps true that these instructions were inartfully worded. We do not find, however, that the instructions are "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, D.C. App., 362 A.2d 706, 709 (1976) (en banc). *Accord, Devone v. United States*, D.C.App., 401 A.2d 971 (1979). As the appellant did not object to either instruction below and thus afford the trial court an opportunity to more deftly phrase the instruction, this court will not intervene.

*United States ex rel. Mathew v. Nelson*, 461 F.Supp. 707 (N.D.Ill.1978); *People v. Howell*, Colo., 586 P.2d 27 (1978) (en banc); *In re Sonsteng*, Mont., 573 P.2d 1149 (1977); *Scopes v. Shah*, 59 A.D.2d 203, 398 N.Y.S.2d 911 (1977);

*In re Salem*, 31 N.C.App. 57, 228 S.E.2d 649 (1976); *People v. Sansone*, 18 Ill.App.3d 315, 309 N.E.2d 733 (1974); *cf. Bell v. Wayne County Gen. Hosp.*, 384 F.Supp. 1085, 1102 (E.D. Mich.1974).

Having reviewed the record of the proceedings below, we find no basis for reversing the commitment order, and consequently, we affirm.

*Affirmed.*