In the Matter of Larry **BUMPER**, Appellant.

No. 80–966.

District of Columbia Court of Appeals.

Submitted Nov. 17, 1981.

Decided Feb. 2, 1982.

---

9. Heller contends that it received no compensation for these hours.

Thomas C. Devlin, Washington, D.C., appointed by the court, was on the brief for appellant.

Charles F. C. Ruff, U. S. Atty., with whom John A. Terry, John R. Fisher, Pamela B. Stuart, and Sylvia Royce, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before MACK and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

MACK, Associate Judge:

Appellant appeals from a judgment ordering civil commitment following a jury trial pursuant to D.C. Code 1973, § 21–545, arguing that the trial court improperly instructed the jury in two respects. Finding no reversible error, we affirm the judgment below.

At trial two psychiatrists and appellant's mother testified concerning specific instances of appellant's aberrant behavior. The psychiatrists also offered diagnoses and expert opinions on appellant's condition. Appellant presented no witnesses on his own behalf. At the conclusion of the trial the court instructed the jury, in part, as follows:

> The hospital bears the burden of proof and must prove [that the respondent is mentally ill, and that because of that illness he is likely to injure himself or others if allowed to remain at liberty] by clear and convincing evidence. If you find that the hospital has failed to establish ... these elements, the Court may not order the respondent to be hospitalized or treated, but must order the immediate release of Mr. Bumper from the hospital.
>
> If, on the other hand, your verdict is for the hospital ... the Court may then order the respondent hospitalized for an indeterminate period of time or order such other alternative course of treatment as the Court believes will be in the best interest of Mr. Bumper and of the public.
>
> *Such other treatment may be outpatient treatment from the hospital or treatment in a nursing home or in a foster home or such other as is indicated by the case.* [Emphasis added.]

Appellant contends that the trial court erred in instructing the jury on the consequences of its verdict and argues that the rule of *United States v. McCracken*, 488 F.2d 406 (5th Cir. 1974) (holding that trial court committed reversible error when jury instructions informed jury of the consequences of a verdict of not guilty by reason of insanity in a criminal trial) should be extended to civil commitment proceedings.[1]

1. The District of Columbia has not adopted the *McCracken* rule in criminal trials. A court may, in its discretion, instruct the jury on the consequences of a verdict of not guilty by rea-

We can agree that the consequence per se of commitment is the same whether one faces it as a result of civil commitment proceedings or a criminal trial. But, while there are similarities between the proceedings, there are also differences. Factfinders in criminal trials focus on past conduct; in civil commitment proceedings, the factfinder focuses not only on past conduct, but current mental status and a factor carrying with it an element of predictability—the likelihood and character of future aberrant conduct. Civil commitment proceedings are, at least in theory, not adversarial in nature; rather, the interests of the individual and of the state should be congruent. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *In re Snowden*, D.C.App., 423 A.2d 188 (1980).

We approved a virtually identical instruction as that in issue here in *In re Snowden, supra*. However, because appellant challenges this instruction on grounds that differ from those we reviewed in *Snowden* that case does not control our decision today.

■ We hold that a court may properly instruct a jury on verdict consequences in civil commitment proceedings in light of the broader responsibility accorded the factfinder in these cases. The very nature and purpose of a civil commitment proceeding justifies at least minimal instruction on the consequences that will flow from a verdict. Awareness that a respondent will be required to submit to treatment or released on the basis of a verdict does not impair the ability of a jury to weigh the evidence in light of the statutory criteria of mental illness and likelihood of future injury. In fact, D.C.Code 1973, § 21–545(b) requires the jury to determine whether injury is likely "*if* [a respondent is] *allowed to remain at liberty*" (emphasis added).

Appellant directs his challenge, however, not to this aspect of the instruction, but, rather, to the sentence italicized *supra* in which the court discussed treatment alter-

son of insanity even over the objection of a defendant. *United States v. Brawner*, 153 U.S.

natives that would be available in the event of a verdict for the hospital. He argues that this discussion, coupled with the absence of an instruction detailing voluntary treatment alternatives that would be available if the verdict were for appellant, improperly prejudiced the jury toward a verdict for the hospital.

■ We find the court's discussion of these less restrictive treatment alternatives to be consistent with the broader responsibility of the jury in civil commitment proceedings, particularly in light of the possibility that a jury will be unfamiliar with alternatives to full hospitalization. We quote with approval the trial court's rationale for offering this instruction:

> [T]he jurors, from what they have heard so far, would have no understanding of what type of care the Court would have authority to give unless I tell them in these instructions and since there has been no discussion made and none can be made at this time as to what the nature of treatment would be in his best interest, I will let them understand what the Court's authority is for Mr. Bumper if they find him ill.

However, we agree with appellant that a problem could arise where the trial court, in discussing the treatment alternatives it could order if it rendered a verdict for the hospital, does not balance that discussion with the observation that appellant could seek similar voluntary assistance if released. Such instructions run the risk of inducing the jury, contrary to the requirements of D.C.Code 1973, § 21–545, to commit a patient who the jury believes would benefit from treatment, even if the patient is not likely to injure himself or others. In order to prevent such prejudice, the court should instruct the jury regarding the alternative treatment available to one who is not, as well as one who is committed.

The failure to provide such instructions here, however, does not constitute grounds

App.D.C. 1, 471 F.2d 969 (1972) (en banc).

for reversal. Evidence was introduced at trial indicating that appellant had received voluntary medical treatment in the past. The jury, therefore, was informed that the patient could seek and receive treatment even if he was not committed. In this context, the instructions did not constitute grounds for reversal.

Appellant also challenges the court's instruction on the concept of "injury," arguing that it emphasized passive injury and injury caused by nonviolent acts excessively and thus left the jury with an overly broad definition of this concept. Appellant argues that the trial court erred in rejecting an instruction that required the jury to find actual danger based on overt acts or to find that "a high probability exists that the respondent will engage in conduct that will result in substantial harm to others."

■ Appellant's proposed instruction misstates the law. This court has refused to add the requirement of a recent overt act indicating future dangerousness to the substantive test of D.C.Code 1973, § 21–545(b).[2] *In re Snowden, supra.* Appellant's proposed instruction would improperly increase the burden of proof beyond the clear and convincing evidence standard adopted in *In re Nelson,* D.C.App., 408 A.2d 1233 (1979) by requiring proof of *high* probability that *substantial* harm would result if respondent were at liberty. The proposed instruction reflects neither the burden of proof nor the statutory elements accurately.

The trial court's instruction on "injury" conforms to the standard espoused by this court in *In re Mendoza,* D.C.App., 433 A.2d 1069, 1071–72 (1981):

In a civil commitment proceeding, the jury may properly examine only the nature of the alleged mental illness and appellant's past conduct in assessing the likelihood of his causing future inju-

ry. . . . [A] jury instruction must be sufficiently pure to protect against misleading the jury into speculation. These considerations also militate against our attempting to devise a standard jury instruction. The term "injure" is sufficiently vague and the panoply of aberrant conduct requiring civil commitment sufficiently unforeseeable that our only guidance for judges is to require them to tailor the instruction on the case by case basis, in the common law tradition.

The court in *Mendoza* reversed a judgment of civil commitment where the trial court instructed the jury that likelihood of injury encompassed injury to reputation, chance of future employment and ability to progress in life as this charge invited speculation on matters not properly before it.

We find that the trial court properly instructed the jury that "injury" included unintentional injury and that injury could result from nonviolent acts. Evidence at trial indicated that appellant's behavior, while not always violent, could induce violence in others.[3] The evidence also indicated that appellant did not necessarily intend to elicit violent reactions from those around him. We are satisfied that the court tailored its instruction on "injury" to the evidence in the instant case and therefore committed no error.

*Affirmed.*

---

**2.** D.C.Code 1973, § 21–545(b) provides in part:

If the court or jury finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty, the court may order his hospitalization for an indeterminate period . . . .

**3.** Witnesses testified about specific instances in which appellant's behavior provoked violent reactions from others. For example, appellant attempted to assault other patients, climbed into others' beds at night, and accused others of raping or mutilating him.