**In the Matter of Russell SAMUELS.**

**No. 85–405.**

District of Columbia Court of Appeals.

Argued Jan. 23, 1986.

Decided April 2, 1986.

Maureen T. Cannon, Public Defender Service, with whom James Klein and Mark S. Carlin were on brief, for appellant.

Ilene G. Rosenthal, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr. and Diane G. Clark, Asst. U.S. Attys., were on brief, for appellee.

Before PRYOR, Chief Judge, FERREN, Associate Judge, and SALZMAN, Associate Judge of the Superior Court of the District of Columbia.[1]

SALZMAN, Associate Judge:

Russell Samuels appeals his civil commitment to Saint Elizabeths Hospital for mental illness. That commitment stems from October 8, 1984, when Metropolitan Police Officer George P. Dodson found Mr. Samuels speaking incoherently and wandering aimlessly amidst moving automobile traffic on the freeway ramp leading to Maine Avenue. Officer Dodson brought Mr. Samuels to Saint Elizabeths Hospital where he was admitted on an emergency basis. The Hospital superintendent thereafter petitioned for Mr. Samuels' hospitalization under court order pursuant to D.C. Code §§ 21–541 *et seq.* (1981). After the Mental Health Commission recommended that Mr. Samuels be committed to Saint Elizabeths he demanded a jury trial. On February 5, 1985 a jury found Mr. Samuels mentally ill and as a result likely to injure himself or others if allowed to remain at liberty. On March 6, 1985 the Court ordered Mr. Samuels committed indefinitely to Saint Elizabeths Hospital.

Mr. Samuels asserts on appeal that: (1) the jury was improperly told of his previous commitments to mental hospitals; (2) Hospital counsel improperly argued the truth of hearsay evidence to the jury; (3) the evidence of his dangerous behavior was insufficient to support commitment; and (4) the jury was improperly permitted to consider his penchant for disrobing in front of women as an act likely to injure others.

1. Sitting by designation pursuant to D.C. Code § 11–707(a) (1981).

None of those assertions is well-founded and we affirm the commitment order.

## I

■ A civil commitment proceeding focuses on the respondent's mental condition at the time of the hearing. The jury must determine whether clear and convincing evidence shows the person before it currently mentally ill and likely to be dangerous to self or others because of that illness if allowed to remain at liberty. D.C. Code § 21–545(b) (1981); *In re Morrow*, 463 A.2d 689, 692 (D.C.1983); *In re Mendoza*, 433 A.2d 1069, 1070–71 (D.C.1981). An earlier jury's determination of an individual's mental state at some past time is not proof of his or her current condition. Accordingly, the prior determination is inadmissible at a later commitment hearing and counsel may not mention it to the jury. *In re Lomax*, 367 A.2d 1272, 1281–82 (D.C.1976), *reversed on other grounds and vacated en banc*, 386 A.2d 1185 (D.C.1978).

In this case Dr. Virginia Ladendorf, the Saint Elizabeths staff psychiatrist treating Mr. Samuels, and Mrs. Vera Samuels, respondent's mother, testified for the Hospital. In explaining why she believed Mr. Samuels currently mentally ill and dangerous, Dr. Ladendorf told the jury about information she said came from records of respondent's prior hospitalizations for mental illness. And Mr. Samuels' mother mentioned in her testimony that her son had been hospitalized previously and that she had sought his commitment in the past. Mr. Samuels now urges that the testimony of these two witnesses, taken together, improperly alerted the jury to an earlier

jury's determination of his mental state. This, he contends, violates the ruling in *Lomax, supra,* and warrants setting aside his present commitment.

■ Mr. Samuels misreads the *Lomax* opinion. The vice discerned there was defense counsel deliberately calling the jury's attention to an earlier jury's finding that Mr. Lomax was not dangerous. The opinion condemned counsel's intentional disclosure of that irrelevant and unprobative evidence.[2] In contrast, in the case now before us Hospital counsel made no mention of prior judicial determinations of Mr. Samuels' mental state. The remarks by Mr. Samuels' mother that she would "go to court and get a commitment" when her son's behavior deteriorated were no more than passing comments in her testimony, neither deliberately elicited nor improperly emphasized by Hospital counsel. *See id.,* 367 A.2d at 1282. Mr. Samuels' trial counsel apparently did not deem the matter prejudicial, for she made no objections and requested no cautionary instructions on this issue.

Similarly, Dr. Ladendorf's references to Mr. Samuels' prior hospitalizations were permissible. The psychiatrist was entitled to review and rely on information in the records of Mr. Samuels' previous stays in mental hospitals in diagnosing his present condition.[3] Given her diagnosis that Mr. Samuels' mental condition was a chronic one, the psychiatrist's mention of his earlier hospitalizations and incidents occurring during them was appropriate and could have been anticipated.[4] The jury was entitled to learn the factors underlying the doctor's diagnosis in order to weigh it in

---

2. That this was the point being made in *Lomax* is confirmed by the court's observation that: "We have no doubt but that had the government alluded to a previous proceeding in which appellee had been adjudged mentally ill and dangerous, and encouraged the jury to take note of that fact, appellee's counsel properly would cite such conduct as grounds for a mistrial." *Id.,* 367 A.2d at 1282.

3. *See, e.g., In re Morrow, supra,* 463 A.2d at 694 (Ferren, J., concurring). A similar rule obtains

in criminal cases where the defendant's mental state is in issue. *Alexander v. United States,* 115 U.S.App.D.C. 303, 304, 318 F.2d 274, 275 (1963); *Jenkins v. United States,* 113 U.S.App.D.C. 300, 303–304, 307 F.2d 637, 640–41 (1962) (*en banc* ).

4. *Cf., In re Snowden,* 423 A.2d 188 (D.C.1980) (psychiatrist's testimony about respondent's "thirteen admissions to Saint Elizabeths Hospital").

their deliberations. *L.C.D. v. District of Columbia*, 488 A.2d 918, 921 n. 8 (D.C. 1985); *Brown v. United States*, 126 U.S. App.D.C. 134, 142, 375 F.2d 310, 318 (1966), *cert. denied*, 388 U.S. 915, 87 S.Ct. 2133, 19 L.Ed.2d 1359 (1967). Moreover, Mr. Samuels is not in a position to complain about the jury's awareness of his prior hospitalizations. His own trial counsel effectively brought that information to the jury's attention by questions at the *voir dire.*

Whether considered singly or in combination, the testimony of the psychiatrist and respondent's mother violated no principle enunciated in *Lomax.* Admission of their testimony was therefore not "plain error" that the trial court was obliged to notice *sua sponte* to protect the respondent's rights. We accordingly find no merit to Mr. Samuels' arguments that his commitment must be set aside on this ground.

## II

In explaining the basis for her opinion that Mr. Samuels was mentally ill and dangerous, Dr. Ladendorf testified about a number of incidents of his aberrant behavior. Some of these the doctor observed herself (*e.g.*, his running his head into a wall), but others (such as his striking staff members and other patients and his breaking furniture) she learned from notations in Mr. Samuels' medical records. Mr. Samuels contended below that those notations were hearsay and admissible only to permit the jury to weigh the psychiatrist's opinion but not for the truthfulness of the incidents reported. He therefore requested the jury to be instructed accordingly. The

Hospital did not object and the trial court did instruct the jury twice to that effect, once immediately before Dr. Ladendorf testified and again in closing instructions.[5]

Mr. Samuels now complains that, despite those instructions, Hospital counsel improperly argued the truth of those hearsay statements in closing argument to the jury. The Hospital denies this allegation. The Hospital also points out that Mr. Samuels' trial counsel raised no objections to its arguments, although the trial judge expressly invited counsel to do so if any error in the closing remarks was perceived.

Given this posture of the case, we may set aside the commitment only if Hospital counsel's argument was so egregious that the trial court committed "plain error" in not giving further cautionary instructions or otherwise remedying the error; that is to say "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Chavarria v. United States*, 505 A.2d 59, 63 (D.C.1986) (quoting *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (*en banc*)).

We have reviewed the transcript of Hospital counsel's closing arguments with those considerations in mind. Without rehearsing everything counsel said, we note that her comments to the jury included explicit references to the trial court's instructions about the correct use of the psychiatrist's testimony; clearly counsel sought to conform her argument to those guidelines. Even if we accept for purposes of argument that Hospital counsel was not entirely successful in her endeavor to do

---

5. The court's instruction that medical notations are admissible only for purposes of evaluating the psychiatrist's opinion and not for the truthfulness of the notations themselves presents a troublesome distinction. Some students of the law of evidence consider the distinction "one most unlikely to be made by juries," and it has been abandoned in certain situations. See, *e.g.*, FED.R.EVID. 803(4) (admitting for all purposes a patient's statements to a physician made for diagnostic purposes), and the Advisory Committee comments on that rule. Conceptual problems are bound to arise when a judge tells a jury

that the jury may consider psychiatric diagnoses based on medical records customarily relied on in professional practice, but then tells the jury that it may not consider the "truthfulness" of those records for any other purpose. Given the posture of this appeal and our disposition of it, we simply note our concern and leave the question for a case in which the issue is squarely presented and fully briefed. See FED.R.EVID. 703 and the Advisory Committee notes that follow, and McCORMICK ON EVIDENCE § 15 (3d ed. 1984) and authorities cited there.

**154**

so, the hearsay Mr. Samuels complains about was the kind psychiatrists customarily rely upon in formulating an opinion of a patient's mental condition. It was therefore properly brought to the jury's attention.[6] Mr. Samuels concedes, moreover, that the medical records containing the information were not inherently inadmissible but could have been offered under the business records exception to the hearsay rule. And the court cautioned the jury not once but twice on the proper use of the information from the medical records. Finally, we note that the Hospital's argument evidently did not strike Mr. Samuels' trial counsel, who heard it given, as unfairly prejudicial. These considerations lead us to conclude that the trial proceeding's integrity was not jeopardized by Hospital counsel's argument and to reject this ground for reversal.

### III

Mr. Samuels also contends that the Hospital failed to present evidence sufficient to support the jury's finding that he is likely to injure himself or others if allowed to remain at liberty. We find no support for this contention. The jury heard three witnesses recount specific instances of Mr. Samuels' behavior. Officer Dodson described finding Mr. Samuels wandering aimlessly and speaking incoherently in the midst of moving automobile traffic. This act alone is an indication that Mr. Samuels' behavior endangered both his own well-being and the safety of others. In addition, the jury heard Mrs. Samuels testify that her son had on various past occasions shattered a glass window, put a hole in a wall, smashed a guitar and threatened family members. Finally, Dr. Ladendorf reported she had personally observed Mr. Samuels ram his head into a steel door and follow and frighten women patients. While some of those incidents are more recent than others, together they provide an ample substantive basis from which the jury could conclude that, because of his mental illness, Mr. Samuels is likely to injure himself or

others if released from hospitalization. *In re Mendoza, supra,* 433 A.2d at 1070–71; *In re Snowden, supra,* 423 A.2d at 191–92.

### IV

Mr. Samuels' final contentions concern Dr. Ladendorf's testimony that his disrobing in front of women is an act likely to cause harm. He argues that other people's reactions may not be considered in determining whether his behavior is apt to be injurious. Contrary to that assertion, one may be held responsible for the foreseeable consequences one's actions induce. For the purposes of civil commitment, aberrant behavior need not involve actual violence so long as the jury may reasonably find that it is likely to be dangerous to others. *See, In re Bumper,* 441 A.2d 975, 978 (D.C.1982); *In re Mendoza, supra,* 433 A.2d at 1071–72. Dr. Ladendorf testified without contradiction that Mr. Samuels' disrobing in front of women could cause significant emotional injury to those vulnerable to sexual approaches. This is different from a situation where the injury asserted is merely speculative damage to reputation or future earning power, as in *Mendoza, supra.* Further, Mr. Samuels' disrobing was but one of a number of examples of aberrant behavior that the doctor mentioned as underlying her opinion that he is likely to injure others if allowed to remain at liberty. In the circumstances, the trial court did not err in permitting the jury to learn of it.

Because we conclude that none of Mr. Samuels' contentions warrants reversing his civil commitment, the order for judicial hospitalization is *affirmed.*

*So ordered.*

---

6. See cases cited *supra,* nn. 3 and 4.