**Leslielyn HARDESTY, Appellant,**

v.

**Debbie DRAPER, et al., Appellees.**

**No. 91–SP–216.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1995.

Decided Jan. 23, 1997.

Laurie B. Davis, Public Defender Service, with whom James Klein and David L. Norman, Public Defender Service, were on the brief, for appellant.

Thomas A. Guidoboni, Washington, DC, filed a memorandum for appellees. Kathleen M. Stratton, Washington, DC, entered an appearance for appellees.

Before WAGNER, Chief Judge, KING and RUIZ, Associate Judges.

RUIZ, Associate Judge:

In this appeal, appellant Leslielyn Hardesty asks this court to review the trial court's denial of her petition for habeas corpus seeking release from the custody of the Psychiatric Institute of Washington ("PIW"). In particular, she seeks a ruling on the procedure used by PIW to review applications for admission filed by parents on behalf of their minor children pursuant to D.C.Code § 21–511 (1989). Hardesty was released from PIW before she filed this appeal and has since reached the age of majority. We dismiss the appeal as moot.

## I.

Hardesty was seventeen and a half years old when her mother had her admitted to PIW. Some six months earlier, Hardesty had

left home, where she had been living with her mother and stepfather, and gone to Philadelphia, where she lived with her aunt and other relatives, enrolled in high school and otherwise led the life of a teenager. According to Hardesty, she was doing well in Philadelphia.

Her mother called Hardesty and persuaded Hardesty to meet to talk. On January 11, 1991, Hardesty's mother picked her up, but instead of the promised mother-daughter chat, her mother drove into the District of Columbia under the pretense of going to dinner, picking up a friend along the way. Between Hardesty's mother and her friend, Hardesty was forcibly taken to PIW, where she was admitted against her will.

At PIW, Hardesty was admitted under the "voluntary hospitalization" provisions of D.C.Code § 21–511 (1989).[1] After Hardesty was able to contact her aunt in Philadelphia by mail some time later, she obtained counsel. On January 25, 1991, Hardesty filed a petition for habeas corpus to obtain her release from the hospital. PIW opposed the petition, which was denied by the trial court after a hearing. This appeal is from the denial of Hardesty's habeas petition.[2]

Hardesty was discharged from PIW on February 10, 1991. She turned eighteen on June 23, 1991.

This appeal has had a long history. PIW filed a motion to dismiss on August 20, 1991, which Hardesty opposed on the grounds that she continues to suffer collateral consequences as a result of having been hospitalized at PIW and that the injury is "capable of repetition yet evading review." PIW's motion was denied without opinion by a motions division of this court and Hardesty filed a brief on the merits. At the request of the parties, and before PIW filed its brief on appeal, the appeal was stayed in 1992 to permit them to pursue settlement negotiations. When those negotiations failed, the appeal was revived in 1995. In a subsequent memorandum filed in this court, PIW stated that it would not brief or argue the case on appeal because PIW, which changed ownership in 1995, has since changed the admission procedures in use when Hardesty was admitted in 1991.

## II.

The doctrine of mootness serves both to confine the power of the judiciary and to ensure that cases are decided on the basis of full argument on a developed record. *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5, at 125 (2d ed.1994). The power this court has been granted by the legislature is to resolve disputes between parties. *See* D.C.Code § 11–721(b) ("[A] party aggrieved by an order or judgment ... may appeal therefrom as of right to the District of Co-

---

1. D.C.Code § 21–511 provides:

   A person may apply to a public or private hospital in the District of Columbia for admission to the hospital as a voluntary patient for the purposes of observation, diagnosis, and care and treatment of a mental illness. Upon the request of such a person 18 years of age or over, or, in the case of a person under 18 years of age, of his spouse, parent, or legal guardian, the administrator of the public hospital to which application is made shall, if an examination by an admitting psychiatrist or an admitting qualified psychologist reveals the need for hospitalization, or the administrator of the private hospital to which application is made may, admit the person as a voluntary patient to the hospital for the purposes described by this section, in accordance with this chapter.

2. Hardesty claims on appeal that her admission to PIW was in violation of D.C.Code § 21–511 because she was not mentally ill and in need of hospitalization for treatment. Specifically, Hardesty claims that the procedures used upon her admission did not meet the statutory requirement that "an examination by an admitting psychiatrist or qualified psychologist reveal[ ] the need for hospitalization" or constitutional due process requirements. Hardesty further claims that, in any event, because she was an emancipated minor at the time of her hospitalization, § 21–511 is inapplicable unless she voluntarily sought admission to the hospital, which she did not. Hardesty finally faults the trial court's failure to hold an evidentiary hearing before ruling on her habeas petition. In the habeas proceeding, PIW contended that the statutory requirement for an admission examination does not apply to private hospitals and that, even if it did, an examination was conducted sufficient to satisfy statutory and due process requirements. In light of our dismissal of the appeal, we do not address the merits of Hardesty's claims.

lumbia Court of Appeals."); *id.* at § 11–721(d) (permitting this court, in its discretion, to hear interlocutory appeals certified by trial court where, *inter alia,* immediate review "may materially advance the ultimate termination of the litigation or case"); *id.* at § 11–721(e) (providing that on review, this court shall give judgment "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* D.C.Code § 11–705(b) ("Cases and controversies shall be heard and determined by divisions of the court unless a hearing or a rehearing before the court en banc is ordered."). Thus, our authority to determine the law is a necessary adjunct to this court's principal duty of dispute resolution.

Furthermore, in the absence of adversarial argument motivated by a real threat of detriment, there is less assurance that the issues presented for decision will be fully aired. Lack of full exploration of issues may limit the value of our decisions.[3]

■■■ A case is generally deemed moot and nonjusticiable if "there is no reasonable expectation that the alleged violation will recur [to the complaining party] and ... interim relief or events have completely and irrevocably eradicated the effects of the violation." *In re Morris,* 482 A.2d 369, 371 (D.C.1984) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)) (internal quotation marks and citations omitted). Even if those two facts are present, however, the court may nevertheless consider the case, if the violation is one that is capable of repetition, yet will evade review. *Id.* at 372; *In re DeLoatch,* 532 A.2d 1343, 1344 (D.C. 1987). That exception is consistent with the policies underlying the mootness doctrine. If the legislature has given the court power to review, but because of the nature of a particular issue, review of that issue will always be defeated if pursued in the normal course of affairs, then it is appropriate, in essence, to conduct the review in advance of the event, particularly where at least one of the parties to the appeal has a continuing interest in its resolution.

Because Hardesty is over the age of majority, there is no danger that her parents will "voluntarily" commit her. Hardesty argues, however, that the 1991 hospitalization will have continuing effects on her. In support of her argument, she relies on a number of cases in which it has been held that a challenge to a commitment is not moot even after the patient is no longer hospitalized: *In re Rosell,* 547 A.2d 180, 181 (D.C.1988); *In re Morris, supra,* 482 A.2d at 372; *In re Ballay,* 157 U.S.App. D.C. 59, 62, 482 F.2d 648, 651 (1973); *Justin v. Jacobs,* 145 U.S.App. D.C. 355, 357, 449 F.2d 1017, 1019 (1971). Those cases are inapposite because they all concerned involuntary commitments where an adjudication had been made that the appellant, as a result of mental illness, was a danger to himself or society. In *Justin,* the court explained that even though such a person is released, the *legal* effects of such a prior commitment could continue to be felt in the form of disabilities from voting, serving on juries, owning weapons, and obtaining a driver's license. 145 U.S.App. D.C. at 357, 449 F.2d at 1019.[4] Furthermore, the fact of the prior commitment could in such a case be used in any future proceeding for involuntary commitment. *Ballay, supra,* 157 U.S.App. D.C. at 63, 482 F.2d at 652; *cf. Friend v. United States,* 128 U.S.App. D.C. 323, 325, 388 F.2d 579, 581 (1967) (hearing appeal from order revoking conditional release from involuntary commitment to mental hospital even after it had been reinstated, in part because "[a]ppellant complained his employment opportunities are adversely affected

---

3. *Cf. Umana v. Swidler & Berlin Chartered,* 669 A.2d 717, 720 n. 9 (D.C.1995) (holding that questions resolved only by implication or in dicta are not binding authority).

4. Similarly, in the criminal context, the Supreme Court has stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral *legal* consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) (emphasis added).

when prospective employers learn of the issuance of the [conditional release revocation] *order* under appeal" *and* likelihood existed that conditional release would again be revoked and appellant rehospitalized) (emphasis added).

The present case is significantly different from the cases in which collateral consequences have been recognized to persist even after discharge. Hardesty was not adjudged to be mentally ill and committed on the grounds she was a danger to herself or others as a result of mental illness.[5] Instead, her mother, acting as her legal guardian, had her admitted for "voluntary hospitalization" for treatment for mental illness.[6] Such a hospitalization does not entail any of the legal disabilities recognized by courts following an adjudication of mental illness.

Hardesty does not contend that being committed to an institution as a minor in such a manner has resulted in any *legal* disability. Hardesty argues that the treatment records generated during her stay at PIW could be used in subsequent proceedings, citing *In re Samuels,* 507 A.2d 150, 152 (D.C.1986). *Samuels* allows *facts* contained in treatment records to be relied upon by a physician testifying in a commitment hearing; it does not allow a prior commitment determination, whether lawful or unlawful, to be used in a subsequent proceeding. *Id.* ("An earlier jury's determination of an individual's mental state at some past time is not proof of his or her current condition. Accordingly, the prior determination is inadmissible at a later commitment hearing.") Here, there was no commitment based on a determination that Hardesty was mentally ill and dangerous to herself or others. Therefore, assuming *Samuels* applies, only facts in Hardesty's treatment records could be used in a future commitment hearing—should that ever come

to pass. Even so, the question will be whether Hardesty *is then* mentally ill.

Hardesty further argues that the fact of her hospitalization may surface in the future in other contexts, undermining her efforts to obtain disability insurance or apply for employment or financing. In essence, Hardesty argues that she will be hurt by her hospitalization because of the stigma attached to mental illness. Hardesty's arguments raise serious concerns about the ignorance and prejudice surrounding the subject of mental illness. A court presented with these very real concerns must take such potential injury into account in determining whether a litigant has a sufficient stake in the outcome of litigation to keep it alive.

Even though a record of hospitalization in a mental hospital may present difficulties for Hardesty, prudential principles limiting the scope of judicial power caution against acting where a judicial determination is incapable of providing effective relief. Were we to consider the appeal, and agree with Hardesty that the admission procedures used in the course of her hospitalization were unlawful, we might be able to order that PIW's records reflect that determination. *See In re Rosell,* supra, 547 A.2d at 182 n. 4; *In re Morris,* supra, 482 A.2d at 373–74. Because Hardesty was never adjudged mentally ill, however, a determination that PIW's procedures were unlawful would not amount to an endorsement of her mental health. Moreover, it is far from clear that we could or should order expungement of truthful facts contained in those records, such as the fact that Hardesty was hospitalized, even were the hospitalization unlawful. We cannot rewrite history and obliterate the fact that Hardesty was hospitalized for thirty days in early 1991. In those cases in which we have ordered correction of hospital records, there has been a

---

**5.** Indeed, Hardesty appears not to have been diagnosed as having a specific mental illness, but as requiring observation and treatment for a "mental condition."

**6.** Hardesty states that although her admission to PIW was accomplished under the voluntary hospitalization procedures of D.C.Code § 21–511, she was in fact tricked by her mother and taken

to PIW by force and against her will. Even assuming that the hospitalization was involuntary in fact, it was done pursuant to her mother's authority as legal guardian. Under § 21–511, a parent's hospitalization of a minor is equivalent to that of a person who voluntarily checks herself into a hospital.

threat that, if left uncorrected, the records of the challenged commitment could be used, at least in part, to accomplish subsequent commitments. *Id.* at 373. There is no such credible threat in this case.

Finally, Hardesty's reliance on *In re A.C.,* 573 A.2d 1235 (D.C.1990), for the proposition that she could experience collateral consequences from the trial court's determination—as opposed to the hospitalization—is also misplaced. In *In re A.C.,* we reviewed a grant of declaratory judgment in favor of a hospital permitting it to perform a caesarean section on a woman who was dying from cancer. *Id.* at 1237. The operation had been performed and both mother and child had died. *Id.* We found the case not moot because our decision could have an effect on a separate civil action the mother's personal representative had filed on behalf of the estate. *Id.* at 1241. In the present case, there is nothing in the record or the briefs indicating that Hardesty has filed any action seeking any form of relief from her mother, PIW, or any of its employees, other than what she already has obtained by her release; moreover, the time for any such action would appear to have expired.[7] Hence, unlike in *In re A.C.,* there is no live controversy between the parties.

■ We also disagree with Hardesty's contention that the issue presented is one "capable of repetition, yet avoiding review." Now that Hardesty has achieved an age which deprives her parents of authority to hospitalize her under D.C.Code § 21–511, she is no longer at risk of a similar hospitalization against her will. Thus, the issue presented is not "capable of repetition." In *Lynch v. United States,* 557 A.2d 580, 582 (D.C.1989), we declined to adopt the federal mootness rule that requires that the issue be capable of repetition as between the same parties. Even so, the statutory provision at issue here is not one that in its usual operation inevitably will "evade review." *Cf. id.* (challenging pretrial detention); *In re Curry,* 152 U.S.App.D.C. 220, 223, 470 F.2d 368, 371 (1972) (challenging emergency 48–hour and 7–day hospitalization). There is nothing in D.C.Code § 21–511 that so limits the duration of a "voluntary hospitalization."

Because there are no cognizable collateral consequences we have the power to affect and because the issue is not one that is "capable of repetition yet evading review," we dismiss the case as moot.

*So ordered.*

---

7. In her opposition to PIW's motion to dismiss the appeal as moot, Hardesty claims that, in addition to seeking release from the hospital in her habeas petition, Hardesty sought declaratory relief in the form of a declaration that in 1991 she was an emancipated minor and, thus, not subject to hospitalization by a parent under D.C.Code § 21–511; that the PIW procedures in place at the time of her hospitalization violated the statute and her constitutional rights; and that she was not mentally ill. In determining whether an action is moot, we apply the same considerations to requests for declaratory relief that we apply to other actions. *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973). ("[D]eclaratory judgment authority does not supersede the rules of justiciability.") The requested declarations are an attempt to salve what took place in 1991 by saying that it should not have happened, without, as mentioned above, being able effectively to undo what has already been done. Although we do not doubt that Hardesty might derive some personal satisfaction, perhaps even well-deserved, from such statements, the courts are not available for such purposes, particularly where, as here, there is no longer any adversariness between Hardesty and PIW.