Christine P. RALES, Appellant,

v.

Steven M. RALES, Appellee.

Nos. 04–FM–443, 04–FM–444.

District of Columbia Court of Appeals.

Argued June 1, 2005.
Decided Sept. 28, 2006.

Boyd's trial without explaining or even disclosing the contradiction. All in all, in our view, the government's performance in this case has not been up to the standards that this court and the Superior Court have a right to expect.

Nevertheless, the government has effectively promised that there will be no repetition of what occurred here, and we take government counsel at their word. Having made our point, we see no reason to prolong in this opinion the discussion of this issue.

Wilma A. Lewis, with whom Barry E. Cohen, Washington, DC, Sandra L. Gramman, and Wendy H. Schwartz were on the brief, for appellant.

Howard W. Gutman, with whom George A. Borden, Jonathan B. Pitt, Washington, DC, and Linda A. Delaney, Bethesda, MD, were on the brief, for appellee.

Before FARRELL, Associate Judge, and TERRY and SCHWELB, Senior Judges.*

TERRY, Senior Judge:

These consolidated appeals arise from the trial court's denial of appellant's "Motion to Compel [Appellee's] Compliance with Custody Agreement" without first conducting an evidentiary hearing, and from the court's subsequent denial of appellant's "Motion for Disqualification of [Counsel]" as moot. We affirm both rulings.

## I

### A. *The Custody Agreement and Family Therapy*

The primary issue in this case involves the parties' course of action with regard to family therapy. Appellant Christine Rales and appellee Steven Rales, who were divorced in early 2003, executed a custody agreement on March 5 of that year. This agreement, which awards sole legal custody of the couple's three children to Mr. Rales, provides in pertinent part:

> The Parties will engage with the Children in family therapy for at least one (1) year following the execution of this Agreement, or until family therapy is no longer recommended by Dr. Steven Wolin or his successor (the "Family Therapist"). Both parties agree to cooperate in good faith in family therapy and Steve [Rales] will not arbitrarily terminate Dr. Wolin as the Family Therapist for so long as family therapy is needed. The Parties will utilize family therapy for, among other things, attempting to establish consistency between the parties' households ... attempting to resolve conflicts relating to the Children and such other matters as the therapist deems appropriate.

The parties had in fact begun therapy with Dr. Wolin a month before the custody agreement was signed.[1] As early as April

---

* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

1. Mr. Rales spoke approvingly of Dr. Wolin at a hearing on October 30, 2002:

> [A]fter interviewing a number of potential candidates, I settled in on a fellow by the name of Steve Wolin, who is a well-respected professor at GW [George Washington University] and is well known in his field. Particularly for his work with—my term, not necessarily his—resiliency model that again tends to focus on the resilience of all of us as individuals with a more positive and glass half-full approach, if you will, than otherwise.

of 2003, however, Mr. Rales expressed frustration with Dr. Wolin's approach. Dr. Wolin then asked Mr. Rales to "give the process at least eight more sessions." Mr. Rales attended significantly more than eight additional sessions, but in a September 2003 e-mail, he again noted his concern "with the direction of [the family therapy] sessions and the potentially negative impact upon the children." On September 15 he sent an e-mail to Dr. Wolin informing him that he had "decided that a change in therapy would be best for [his] family." Mr. Rales wrote that he "had concerns from the outset with both the model and the process [Dr. Wolin] had recommended, but was willing to work with [him] along the lines he suggested."[2] After meeting "considerably more than the number of sessions [Dr. Wolin] proposed for assessment," Mr. Rales decided that it was "an appropriate time for a change."[3] Mr. Rales notified Mrs. Rales to that effect on September 17, 2003, and sought her help in finding a replacement therapist. Mrs.

Rales, however, responded that Mr. Rales' "unilateral decision to terminate Dr. Wolin as the family therapist ... violates our March 5, 2003 Agreement." Mr. Rales disputed this characterization of his actions and again expressed his desire to obtain a new therapist.[4] In November of 2003, Mr. and Mrs. Rales discussed replacing Dr. Wolin with a therapist named Marianne Walters. Ultimately, however, Mrs. Rales filed a "Motion to Compel [Mr. Rales'] Compliance with Custody Agreement and for Other Relief" on November 26, 2003.[5]

The parties do not agree on whether family therapy did in fact continue after Mr. Rales terminated the sessions with Dr. Wolin. According to a pleading filed by Mrs. Rales in the trial court, "[s]ince the parties' last meeting with the family therapist on September 3, 2003, there has been no established family therapist in place to assist with the resolution of conflicts with regard to the parties' children, as contemplated under the parties' agreement." Mr.

2. Mr. Rales was concerned specifically with the fact that "he [Mr. Rales] was not interested in engaging in marriage counseling or 'couples counseling' with Mrs. Rales in the aftermath of their divorce," since such efforts had been unsuccessful in the past. Mr. Rales instead wanted to focus primarily on the children and felt Dr. Wolin's approach was inconsistent with that goal. Dr. Wolin maintained that he was not performing "couples therapy" with Mr. and Mrs. Rales in the marriage counseling sense but, rather, was using it to "improve their communications and problem-solving skills." The trial judge ultimately found the two characterizations "not notably different."

3. All told, Mr. Rales met with Dr. Wolin more than twenty times, including sixteen sessions that Dr. Wolin classified as "family therapy."

4. Counsel for both parties also exchanged correspondence regarding the family therapy component of the custody agreement. In a letter dated October 19, 2003, counsel for Mrs. Rales stated that Mr. Rales "repeatedly violated" the agreement by, among other

things, "unilaterally and arbitrarily terminat[ing] the family therapy sessions with Dr. Wolin...." The letter asked that Mr. Rales "return to family therapy with Dr. Wolin." Mr. Rales' counsel replied on November 5, 2003, that "Mr. Rales has never violated the Custody Agreement and, to the contrary, has exceeded the requirements of that Agreement." That letter detailed Mr. Rales' reasons for terminating the therapy and asserted that he made the decision in a "careful and deliberate ... manner...."

5. After filing the motion, Mrs. Rales informed Mr. Rales by e-mail that, in her view, the family therapy issue "needs to be resolved as expeditiously as possible and before any consideration is given to moving on with a new therapist." Mr. Rales responded that, because family therapy was called for under the custody agreement, he would move forward with his selection regardless of the motion to compel, but would appreciate Mrs. Rales' input on the selection of a successor therapist.

Rales stated in response, however, that "Ms. Marianne Walters has been the successor family therapist to Dr. Wolin," that Mr. Rales, Mrs. Rales, and the children had all met with Ms. Walters, and that "[t]he parties' Custody Agreement is functioning pursuant to its terms with Ms. Walters as the successor therapist."[6]

### B. *Counsel's Alleged Conflict of Interest*

A second point of contention concerns an alleged conflict of interest involving one of Mr. Rales' attorneys, Sanford Ain. In October of 2002, during the pendency of litigation over custody and other divorce-related matters, another attorney named Rita Bank advised Mrs. Rales' counsel that she planned to form a domestic relations firm with Mr. Ain in early 2003. Mr. Ain was serving, and continued to serve, as Mr. Rales' counsel during the present litigation, and Ms. Bank worked with Mrs. Rales in 2001 when Mrs. Rales needed a domestic relations attorney to represent her in the divorce proceedings.[7] Ms. Bank asked Mrs. Rales to consent to her plans to form a partnership with Mr. Ain. However, in a letter to Ms. Bank dated October 29, 2002, counsel on behalf of Mrs. Rales declined to give that consent, citing Mrs. Rales' "considerable concern at any such alliance and its implications, whatever level of protection might be promised." Ms. Bank nonetheless formed a new law firm with Mr. Ain, which is now known as Ain & Bank, P.C.

### C. *Proceedings in the Trial Court*

In December 2003 Mr. Rales filed a "Motion for Declaratory Relief that Ain &

Bank, P.C., Continue to Represent [Mr. Rales]." About two weeks later, Mrs. Rales filed a "Cross–Motion for Disqualification of Ain & Bank, P.C. as Counsel for [Mr. Rales]."[8]

On March 15, 2004, Mrs. Rales requested rulings on her pending motions. Specifically, she sought an "early ruling on the relief requested" in the motion to compel. As to the motion for disqualification, however, she did not ask for an "early ruling," but simply noted that "the passage of time while the [motion for disqualification] remains unresolved adversely affects [Mrs. Rales'] important interests. . . ."

In a lengthy order issued March 31, 2004, the trial court denied, without a hearing, Mrs. Rales' motion to compel. The court stated that "the parties have . . . explained their positions and the bases for them, although [Mrs. Rales] waited until her reply to do so. Given the nature of the issues presented and the record before the Court, a hearing on the instant motion is neither necessary nor warranted." After considering the memoranda and exhibits filed by both parties, including a series of e-mail exchanges between Mr. and Mrs. Rales, and between Mr. Rales and Dr. Wolin, the court concluded that "[Mr. Rales'] decision to terminate Dr. Wolin as the family therapist was carefully reasoned and considered and was anything but arbitrary." The court went on to say:

> Although the parties' agreement provides for consultation by Mr. Rales with

---

**6.** The trial judge ultimately found, on the basis of the evidence before her, that "although Mrs. Rales does not accept the replacement of Dr. Wolin, family therapy with Ms. Walters is now in place."

**7.** Ms. Bank characterized her role in Mrs. Rales' divorce case as minimal, but Mrs. Rales vigorously disputes that.

**8.** In addition, on November 26, 2003, when Mrs. Rales filed her "Motion to Compel [Mr. Rales'] Compliance with Custody Agreement," she served copies of the motion on all of Mr. Rales' lawyers except for Mr. Ain.

Mrs. Rales on significant decisions regarding the children, with a view toward "attempting to reach parental agreement where possible," the agreement also recognizes Mr. Rales' ultimate authority to make decisions regarding the children and does not provide for joint custody or decision-making. To the extent that the family therapy appeared to Mr. Rales to have joint decision-making as either a primary goal or at least a major subtext, it was entirely reasonable for Mr. Rales to question that approach. Further, to the extent that Mr. Rales believed, after several months, that the therapy was not addressing the issues regarding the children that had been its primary purpose ... it was reasonable for him to decide to make a change.

Mrs. Rales may well dispute the merits of the decision, but her disagreement does not mean the decision was arbitrary.

A week later, on April 7, the court entered an order denying, on the ground of mootness, both Mr. Rales' motion for declaratory relief and Mrs. Rales' motion for disqualification. Although the court found that "the scope of Ms. Bank's representation of Mrs. Rales encompasses all matters at issue in the divorce" and that "issues arising out of the custody settlement agreement" were "substantially related to Ms. Bank's earlier representation of Mrs. Rales," it ultimately concluded that, because it had already ruled on the motion to enforce the custody agreement, "[t]he issue [of disqualification] is now moot with regard to the most recent disputes involving the children." The court also observed that "[n]either party asked for any preliminary or emergency relief on the disqualification question."

## II

 Mrs. Rales asserts in her brief that "when ... a well-founded and timely motion to disqualify counsel is made in pending litigation, the court *must* decide that motion before deciding the merits of the litigation" (emphasis in original). From this premise she concludes that the order denying the motion to compel should be reversed, and that "the Superior Court, on remand, must render a decision based upon a new record, untainted by the participation of the lawyer who should have been disqualified in the earlier proceeding."

There is no clear case law or court rule in the District of Columbia requiring a judge to rule on motions in a certain order. Mrs. Rales relies solely upon *Brown v. District of Columbia Board of Zoning Adjustment*, 413 A.2d 1276 (D.C.1980), *appeal after remand*, 486 A.2d 37 (D.C.1984) (en banc), for the proposition that "when a conflict of interest basis for disqualification of counsel is presented to a court, the court must decide that issue before *ruling* on matters in which the alleged conflict arose, and then disqualify counsel if a conflict of interest has been shown." But *Brown* does not really support her argument.

Contrary to Mrs. Rales' assertion in her brief, *Brown* does not provide "unequivocal authority mandating such a procedure." Its dicta, however, can be read at least to imply that it is the better practice to decide motions to disqualify before reaching the merits. As the *Brown* court noted, "[t]he agency must decide the motion [to disqualify] before it to protect the integrity of its own hearings, and to implement the public policy of deterring conflict of interest." 413 A.2d at 1282. Thus, "[i]f the [agency] concludes there was a conflict of interest then, as a matter of law, the proceeding was tainted, and the [agency] would be required to vacate its decision

and conduct a new hearing." *Id.* at 1285.[9]

Mr. Rales on the other hand cites several cases, from the District of Columbia and elsewhere, for the proposition that courts may, within their discretion, rule on the merits of an underlying matter before ruling on a motion for disqualification. *E.g., United States v. Western Electric Co.,* 310 U.S.App. D.C. 281, 290 n. 7, 46 F.3d 1198, 1207 n. 7 (1995) (trial court has "broad discretion to control its docket" and "inherent power to control the sequence in which it hears matters on its calendar"); *Hoptowit v. Spellman,* 753 F.2d 779, 782 (9th Cir.1985) ("when two or three motions are presented to a court, it has discretion to decide the order in which it would consider and decide them"). Those cases, while not directly on point, lend support to the notion that a trial court is not bound by any specific rule requiring it to decide motions in a certain order. Nevertheless, in the present case, even assuming (without deciding) that it might have made more sense procedurally for the trial judge to rule on the disqualification motion before reaching the merits, we are satisfied that the issue is now moot.

It is of course well settled that "[a] case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Cropp v. Williams,* 841 A.2d 328, 330 (D.C.2004) (citation omitted). In other words, a case is moot "if 'there is no reasonable expectation that the alleged violation will recur [to the complaining party] and ... interim relief or events have completely and irrevocably eradicated the effects of the violation.'" *Hardesty v. Draper,* 687 A.2d 1368, 1371 (D.C.1997) (quoting *In re Morris,* 482 A.2d 369, 371 (D.C.1984)).

Mrs. Rales asked the court to "disqualify [Ain & Bank, P.C.] from further representation of Mr. Rales." Reasonably read, her motion expressed a desire for the court to disqualify the firm from representing Mr. Rales *from that point forward.* She asked for no retroactive relief.[10] Even if the court had ruled on the motion to disqualify first, and had in fact disqualified Mr. Ain from further representation, at most what would have happened is that the parties would have re-filed their motions and supporting evidence, and the court again would have had to rule on the

---

**9.** The issue in *Brown* was whether the Board of Zoning Adjustment ("BZA") had the authority to disqualify counsel. This court held that "the BZA has not only the authority but the responsibility to regulate practice before it." 413 A.2d at 1279. That issue is entirely separate from the issue of whether the Board was *required* to consider disqualification before considering the merits of the case before it, and the court's opinion does not directly support the proposition that appellant now urges us to adopt.

**10.** She asks for retroactive relief now in the form of an evidentiary hearing, but we do not see how such a hearing would be beneficial. Although Mrs. Rales argues that, without a hearing, "Mr. Rales' new counsel would be adopting the work product of counsel who should have been disqualified because of a conflict of interest," we are satisfied that, even if the court disqualified Mr. Ain now and

a new attorney entered the case to oppose Mrs. Rales' motion to compel, the same evidence would be presented, and the same conclusions reached. Moreover, because Mrs. Rales did not ask the trial court to "start over" with respect to the motion to compel (and, indeed, with any proceedings in which Mr. Ain was involved after he and Ms. Bank formed a partnership), she cannot now ask this court to fashion such a remedy absent a clear miscarriage of justice. "It is fundamental that arguments not raised in the trial court are not usually considered on appeal. This court will deviate from this principle only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." *Thornton v. Norwest Bank of Minnesota,* 860 A.2d 838, 842 (D.C. 2004) (citations and internal quotation marks omitted).

motion to compel in light of the new filings.

Given the record before us, and given the fact that Mr. Ain did indeed withdraw from further representation of Mr. Rales, it is difficult to see how this course of action would make any substantive difference, since the trial judge based her initial ruling on the motion to compel on the evidence before her (mainly in the form of e-mail correspondence between the parties), and would surely do so again. Moreover, Mrs. Rales did not seek an expedited decision on the motion for disqualification. In fact, she sought an "early ruling" on the motion to compel, but did not make a similar request regarding the motion for disqualification. Under the circumstances, "there is no reasonable expectation that the alleged violation will recur [to the complaining party]," and no relief which this court could grant with regard to the motion for disqualification that would make a substantive difference in the outcome of the case. *Hardesty,* 687 A.2d at 1371.

### III

Mrs. Rales also asserts that the order denying her motion to compel should be reversed "because the court decided, without an evidentiary hearing, a question of breach of contract which presented material issues of disputed fact requiring the court to conduct a hearing to receive and assess the testimony of key witnesses." In particular, she contends that "it was clear error for the court to make ... findings of fact without holding a hearing to give Mrs. Rales an opportunity to present evidence in support of her motion and, equally importantly, to give her an opportunity to challenge through cross-examination the

credibility of the hearsay assertions of Mr. Rales." We find no error in the court's ruling.

■ Super. Ct. Dom. Rel. R. 7(b)(1)(A) provides, in pertinent part, that "[a] party may request an oral hearing [on a motion] by endorsing at the bottom of the party's motion or opposition, above the party's signature, 'Oral Hearing Requested'; *but the Court in its discretion may decide the motion without a hearing* " (emphasis added).[11] Thus we review the trial judge's decision to rule on a motion without conducting a hearing only for abuse of discretion, and in this case we find none.

■ An evidentiary hearing is of course required if there is a material factual issue that must be resolved in order for the court to render a decision. *See, e.g., In re J.W.,* 806 A.2d 1232, 1235 (D.C.2002). Mrs. Rales claims that several factual issues relating to whether Mr. Rales' decision to terminate Dr. Wolin was "arbitrary" were disputed: whether Mr. Rales actually had concerns throughout the therapy with Dr. Wolin's approach, or whether such concerns were "manufactured" to "provide cover for a naked breach of his obligation to participate in the family therapy with Dr. Wolin to which he had agreed"; whether Mr. Rales "misconstrued" Dr. Wolin's use of the term "couples therapy" in order to support his decision to terminate Dr. Wolin; and whether, after the termination, a successor therapist was in place in accordance with the terms of the custody agreement. An examination of the record reveals that there was really no material factual dispute.

■ First, Mr. Rales clearly expressed his concerns to Dr. Wolin and Mrs. Rales

11. Mr. Rales contends that Mrs. Rales did not properly request a hearing because she failed to follow this rule. While it is true that the motion itself did not include a request for an oral hearing, the supporting memorandum of points and authorities—filed on the same day as the motion—did ask for a hearing, and the trial judge read the motion and the memorandum together as requesting a hearing.

via e-mail, and he did so repeatedly over the course of the therapy, which lasted roughly six and a half months.[12] The e-mails also reveal that Mr. Rales had every intention of carrying out the terms of the custody agreement by participating in the therapy sessions. Indeed, even after his decision to stop therapy sessions with Dr. Wolin, he said that he wanted to reassure Mrs. Rales that his "approach to the issue around family therapy is being taken very seriously, and is receiving much consideration." He explained, in detail, his reasons for discontinuing the sessions with Dr. Wolin and expressed a desire to "move quickly to a replacement who will provide . . . the therapy to which we agreed, with the hope that the goals set forth in our Agreement can be achieved." It was not an abuse of discretion for the trial court to determine, on the basis of this evidence, that Mr. Rales' concerns were legitimate and did not warrant an evidentiary hearing.

Second, simply because Mr. Rales' initial selection of Dr. Wolin was based on what he thought was an appropriate therapeutic model, it is not unreasonable to conclude that, once he actually experienced that therapeutic model in context, his view of its acceptability changed. It is entirely plausible that his understanding of what the therapy would entail in principle differed from what occurred in practice, and that what occurred in practice—joint sessions with Mrs. Rales, which Mr. Rales found frustrating and unproductive—caused him to consider seeking a new therapist with a different approach. The fact that Dr. Wolin clarified his use of the term "couples therapy" to mean therapy relating to "successful parenting of their children" and not the "rehabilitation of their relationship" is of no moment. The dispute between the parties is not over the proper definition of "couples therapy," but over whether Mr. Rales acted arbitrarily in deciding to end that therapy with Dr. Wolin. Given the facts available to the trial court, it was not an abuse of discretion for the court to conclude that issues surrounding the therapeutic model did not warrant an evidentiary hearing.

Finally, Mr. Rales points out, and Mrs. Rales concedes, that the family began seeing another therapist soon after the decision to stop seeing Dr. Wolin. Mrs. Rales nonetheless maintains that, simply because the family members saw another therapist, it is a disputed factual issue whether a "successor family therapist . . . was in place in accordance with the terms of the custody agreement." It is difficult for us to discern any real dispute when both parties essentially agree that they have seen another therapist since Dr. Wolin stepped out of the picture, and it is similarly difficult to see how an evidentiary hearing would shed any light on the matter, other than by determining the number of sessions the family has had—individually and collectively—with the new therapist. Since appellant concedes having seen a successor therapist, we are satisfied that the trial court did not abuse its discretion in declining to hold a hearing on that issue.

### IV

For the foregoing reasons, the orders from which these appeals are taken are both

*Affirmed.*

---

12. Mrs. Rales characterizes the e-mails as "self-serving correspondence," yet she made no objection to the trial court's consideration of them, nor did she dispute their authenticity. There is thus no reason for us to conclude that the trial court should not have considered them as evidence of Mr. Rales' concerns regarding family therapy.